CASE 43—MOTION—JUNE 26.

# Watson, &c., vs. Avery, &c.

ON MOTION FOR A RULE AGAINST THE CHANCELLOR OF THE LOUISVILLE CHANCERY COURT.

1. The court of appeals has power, by rule against an inferior court, to enforce obedience to its mandates. ( *Civil Code*, sec. 902; *Gorham vs. Luckett*, 6 *B. Mon.*, 638.)
2. The mandate of the court of appeals must be considered with reference to the opinion preceding it.
3. The chancellor could not, before entering the mandate and order, as directed by the court of appeals, suspend by injunction his own powers to act in obedience to the mandate, although the petition or response to the motion to have the mandate and order entered, may have presented a *prima facie* cause for enjoining the order of restitution.
4. The mandate of the court of appeals and the order directed by it must be entered, before the chancellor has power to suspend its execution, even for good cause.

THOS. W. BULLITT and
I. & J. CALDWELL,                                    For Appellants,
                        CITED—

*Adams' Equity*, p. 774.
*Story's Equity*, secs. 833, 337–9, 388–9, 779a, 779b.
*Brown's Legal Maxims*, p. 86.
7 *Johns. Chy.*, 162 ; *Lansing vs. Steamboat Co.*
*Hopk. R.*, 135 ; *Deklyn vs. Davis.*
4 *Johns. Chy.*, 21; *Stoner vs. Mann.*
6 *Vesey*, 51; *Pillsworth vs. Hopton.*
*Civil Code*, sec. 162.
4 *Met.*, 127 ; *Taylor vs. Moran.*
*Daniel's Chy. Practice*, p. 1681.

Watson, &c., vs. Avery, &c.

*Mitford's Eq. Pl.*, *p.* 102, *note o.*

9 *B. Mon.*, 79; *Morgan vs. Hart.*

7 *Gill*, 342; *McLellan vs. Crooks.*

14 *Arkansas*, 515; *Biscoe vs. Tucker.*

1 *Wisconsin*, 100; *Miln vs. Medbury.*

6 *B. Mon.*, 638; *Gorham vs. Luckett.*

James S. Pirtle,                           For Respondent,

CITED—

*Civil Code, sec.* 902.

16 *Arkansas*, 181; *Cunningham vs. Ashley.*

9 *B. Mon.*, 80; *Morgan vs. Hart.*

7 *B. Mon.*, 653; *Kane vs. Pilcher.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

In the progress of the suit of B. F. Avery and others against John Watson and others, in the Louisville chancery court, involving the question whether said Avery and D. McNaughton, and J. A. Leech, were ruling elders of the Third or Walnut Street Presbyterian Church, in the city of Louisville, and as such were authorized to act as members of the session of the church in the control of its property, including the church edifice—that court, by an interlocutory order made on the 20th of March, 1866, appointed Henry Farley, George Fulton, and said B. F. Avery, who were the trustees of the church, the court's receivers, "to take charge of the church building, and all property belonging to said church, during the pendency of this suit, or until the further order of the court."

And afterwards, on the 15th day of June, 1866, the following further order was made by the court: "That the trustees, B. F. Avery, Henry Farley, and George Fulton, now receivers, open the church for divine worship and congregational meetings, whenever ordered to

do so by the session of the church, constituted of B. F. Avery, Thomas J. Hackney, D. McNaughton, James A. Leech, John Watson, and Joseph Gault, or a majority thereof."

And afterwards, on the 23d day of June, 1866, the following order was made by said court: "This day came the plaintiffs by counsel, and moved the court to remove George Fulton and Henry Farley as receivers herein, and filed notice thereof; and also filed the affidavit of B. F. Avery herein.

"And then came defendants by counsel and filed the separate affidavits of George Fulton and Henry Farley.

"And said motion being heard, it is ordered that the marshal of this court do take possession of the church property herein mentioned, until the further order of the court, and that the same be opened—1. For Sunday school and other like purposes; 2. For the meeting of the session when notified thereof; 3. For public worship, and such using of the pulpit and the house generally, as the session shall order.

"And it is ordered, that he be respectful to the order of the session; as this court said on the 15th June, the session, according to the decision of the General Assembly, at Peoria, Illinois, has the control of the church building, &c.

" The keys of the church, &c., are ordered to be delivered to the marshal."

It appears in the record, that, on the 23d of July, 1866, the marshal took possession of the church property under said order of the court, and that he held it, and controlled the use of it, in accordance with the orders of a majority of the session, as recognized by the court, including Avery, McNaughton, and Leech.

And afterwards, the court finally, adjudged "that D. McNaughton, Benjamin F. Avery, and James A. Leech, with Thomas J. Hackney, John Watson, and Joseph Gault, are ruling elders that constitute the session of the Walnut Street Presbyterian Church in Louisville; and the management of the property of said church, for the purposes of worship and other religious service, is committed to their care, under the regulations of the Presbyterian Church in the United States of America."

On an appeal from said judgment, prosecuted by Watson and others, this court decided that said Avery, McNaughton, and Leech, were not ruling elders in said church, they not having been elected as such according to the laws and regulations of the church; and that the judgment of the chancellor committing the management and control of said church property to said Avery, McNaughton and Leech, in conjunction with said Watson, Gault and Hackney, was erroneous; and by the mandate of this court the judgment was "reversed, and the cause remanded for proper corrective proceedings respecting the possession, control, and use of the church property, and for final judgment in conformity to said opinion."

At this present term the said appellants, by their counsel, moved this court " to award a summons against the Hon. Henry Pirtle, chancellor of the Louisville chancery court, to appear and show cause why he has refused to carry into effect the mandate of this court in this cause;" and, waiving the summons, the chancellor has appeared and filed his written response to the motion.

From a transcript of the record of the case since the reversal of the judgment by this court, it appears, that, on the 21st day of February, 1868, the following order was made by the court below:

"Came the defendants by their attorneys, and filed in open court a certified copy of the opinion and mandate of the court of appeals rendered in this action, on an appeal, and moved the court to restore to defendants, and those entitled under said opinion, the possession, use, and control of the church building and property, which was taken from them by the marshal of this court, under orders of court, during the pendency of the action, and to dismiss plaintiffs' petition with costs."

No action appears to have been taken on this motion until the 28th of February, 1868, when the following order was made:

"Came the parties herein, and, by way of objection, and in response to the motion herein made by the defendants on the 21st, presented and offered to file a petition in equity against the defendants, to which they object; and plaintiffs moved the court for an injunction against the defendants, enjoining and restraining them from any further prosecution of their said motion, made on the 21st of February, 1868, and from all proceeding by motion, suit, or otherwise, to obtain the possession, control, or use of the property of the Walnut Street Presbyterian Church of Louisville, to which defendants object; and said motions coming on to be heard, were submitted, and the court not being advised, took time."

And, afterwards, in March, 1868, the following order was entered:

"The court being advised, it is ordered, that, upon plaintiffs executing bond in the sum of two thousand dollars, conditioned according to law, the defendants, Joseph Gault, John Watson, George Fulton, and Henry Farley, be, and they are hereby, enjoined and restrained from any further proceedings of this motion in said action,

instituted February 1, 1866, for an order to place them in the possession of, and to give them the control and use of, such property. And the clerk is directed to issue an injunction accordingly. And it is ordered, that the original petition herein be dismissed; and it is adjudged that defendants recover of plaintiffs herein their costs," &c.

The power of this court to enforce its own mandates .cannot be controverted, and is not questioned by the chancellor. Even before the adoption of the Civil Code of Practice, the 902d section of which expressly declares that " the court of appeals shall have power to enforce its mandates," this court, in the case of *Gorham vs. Luckett* (6 *B. Monroe*, 630), asserted and exercised that power. And the court said in that case, that " a court without power to execute its judgments or decrees would be an anomaly in government."

But the motion is resisted on other grounds, which we will examine in the order in which they are stated in the chancellor's response.

1st. It is insisted that the mandate of this court gives the lower court no positive orders to put the defendants or others in possession of the church property; but that the cause being "remanded for proper corrective proceedings respecting the possession, control, and use of the church property," it was within the discretion of the lower court to determine what might be proper orders in the premises; and that the court was not bound to grant the motion of the defendants, made on the 21st of February, 1868, unless, in its judgment, such an order would be a proper corrective order respecting the possession, control, and use of the church property.

Watson, &c., vs. Avery, &c.

. If this construction of the mandatory order of this court be correct, then it is rightly assumed by the chancellor that this court can only determine, on an appeal, whether or not he has properly decided the meaning of the mandate, directing that proper corrective orders be made.

But, in our opinion, the mandate, considered, as it must be, with reference to the principles announced in the opinion preceding it, admits of no such construction. On the contrary, the point being expressly decided that "the judgment of the chancellor, which commits the management and control of said church property to said Avery, McNaughton, and Leech, in conjunction with said Watson, Gault, and Hackney," is erroneous. The mandatory order for "proper corrective proceedings respecting the possession, control, and use of the church property," plainly imports a direction to restore to the defendants such rights of possession, control, and use of the property, as the former judgment had erroneously taken or withheld from them. No undecided question is reserved for further litigation in the court below; but the cause is remanded " for final judgment in conformity" to the opinion of this court.

It seems to us, the directions of the mandate are sufficiently explicit to authorize their enforcement according to section 902 of the Civil Code; and it is the duty of this court to cause them to be executed, unless the refusal of the chancellor to carry them into ·effect was authorized by some other reason than a want of certainty in the decision and mandate of this court.

2d. But, by the response of the chancellor, his refusal to carry the order of this court into effect is also defended on the ground that the petition which the

plaintiffs presented, and offered to file "by way of. objection, and in response to the motion" of the defendants, presented a *prima facie* cause for enjoining the defendants from prosecuting their motion, to have the judgment entered in conformity to the mandate of this court; and that the chancellor was, therefore, authorized to grant the injunction, and thus suspend his own power to act in obedience to the orders of this court. In considering the question thus raised, it will not be necessary to examine the statements of the petition with a view to determine whether they disclose such grounds of equitable relief as would have authorized the court, after rendering a judgment in accordance with the orders of this court, to have granted an injunction suspending its execution, upon the filing of said petition in the manner prescribed by law as in an original action. For, as we interpret the record before us, the paper, though a petition in equity in form, and accompanied by a motion for an injunction, was not filed, as is requisite to commence an action; but the plaintiffs *presented and offered to file it in this cause,* "by way of objection and response to the motion" of the defendants. And although it was, no doubt, intended to operate both as a written defense to the action of the court sought by the defendants in the old suit, and at the same time as the initial pleading in a new one, we must regard it, so far as the action of the chancellor is concerned, as a response of the plaintiffs, interposed to prevent the rendering of a judgment in conformity to the decision and mandate of this court.

Whatever may be the rights of a defeated litigant to review, by proper original proceedings, a final judgment against him, or to enjoin or vacate it for causes not litigated and concluded in the previous action, it

seems to us, for obvious and important reasons, such renewed litigation should not be permitted in a suit which has reached its final decision, and especially should it not be allowed for the purpose of preventing the lower court from correcting its own erroneous judgments in obedience to the mandates of this court.

In the case of *Morgan vs. Hart* (9 *B. Monroe*, 79), cited and relied on by the chancellor, this court said : "We are also satisfied that it would be an inconvenient practice to allow any other demand outside of the original suit, and not disposed of by the decree, to be brought into litigation on the rule or motion for restitution."

Such demand, if just and subsisting, should be set up in an independent suit; and, if there be any equitable reason for not coercing the order or decree for restitution, it should be made available as a ground for enjoining, and not for preventing or modifying, the order of restitution.

Whether the court might have enjoined its own final judgment or not, after correcting previous errors and conforming the record to the mandate of this court, we are of the opinion that it was not authorized by granting the injunction to suspend its own power to enter the corrective judgment asked by the defendants, in conformity with the opinion of this court and in execution of its mandate.

We are gratified to be assured, by the response of the chancellor, that he has not intended to act in contempt' of the authority of this court, and do not doubt that he will cheerfully render a judgment in the cause in conformity to said opinion and mandate of this court, restoring the possession, use, and control of the church building and property to the parties entitled thereto, according to said opinion, and so far as they were

deprived thereof by the marshal of the chancery court under its orders, which the said chancellor is hereby directed to do.

JUDGE WILLIAMS does not concur in this opinion, nor in any order requiring the chancellor to make any order of restitution, until the injunction granted by him is regularly and judicially disposed of and corrected, if erroneous, on appeal, and may hereafter file his reasons.